IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE MCREYNOLDS, MAROC HOWARD, )
FRANKIE ROSS, MARVA YORK, LEROY )
BROWN, GLENN CAPEL, CARNELL MOORE, )
MARK JOHNSON and CATHY BENDER- )
JACKSON, on behalf of themselves and all others )
similarly situated, )
                                              )
                Plaintiffs, )     No. 08 C 6105
      v. )
                                              )     Judge Robert W. Gettleman
MERRILL LYNCH & CO., INC., MERRILL )
LYNCH, PIERCE, FENNER & SMITH, and )
BANK OF AMERICA CORPORATION, )
                                              )
                Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs George McReynolds, Maroc Howard, Frankie Ross, Marva York, Leroy Brown, Glenn Capel, Carnell Moore, Mark Johnson and Cathy Bender-Jackson, on behalf of themselves and all others similarly situated, have brought a two count first amended complaint against defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith and Bank of America alleging racial discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons explained below, that motion is granted.

**BACKGROUND**

Defendant Merrill Lynch & Co. is a financial services holding company incorporated in Delaware and headquartered in New York. Its subsidiaries provide financial and investment services. Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. a full service securities firm

engaged in the retail and institutional sale of securities, option contracts and various other financial products. As of the time of the filing of the instant complaint Merrill Lynch & Co. and Merrill Lynch, Pierce, Fenner & Smith (jointly as "Merrill Lynch") together employed more than 15,000 Financial Advisors or brokers ("FAs") who sold its products and services at branch offices located throughout the country.

Defendant Bank of America Corporation ("BOA") is a financial service company incorporated in Delaware and headquartered in North Carolina. BOA provides a wide variety of banking and investment services. On January 9, 2009, BOA acquired Merrill Lynch in a $50 billion all-stock merger transaction. Merrill Lynch now operates as a wholly owned subsidiary of BOA. As part of BOA's acquisition of Merrill Lynch, BOA and Merrill Lynch announced that they would pay retention awards under an Advisor Transition Program ("ATP") to Merrill Lynch's FAs. In a company-wide broadcast to all FAs, Merrill Lynch executives explained that the retention awards would be based on "projections of FAs' future contributions or 'production,' in essence, future commissions earned on client assets managed by the FA." Pursuant to a formula, Merrill Lynch based the retention awards on "annualized production" through September 2008.

Plaintiffs are African-American FAs who either are currently employed at Merrill Lynch or were employed at Merrill Lynch at the time of the merger. In addition to the instant case, plaintiffs are also named plaintiffs in a companion case against Merrill Lynch in which they allege class-wide racial discrimination throughout Merrill Lynch and all of its branch offices.

See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, 2010 WL 3184179 (N.D. Ill. 2010) ("McReynolds I").[1]

In the instant action ("McReynolds II"), plaintiffs challenge the ATP and Merrill Lynch's decision to design the retention awards based on annualized production credits as being intentional racial discrimination. Plaintiffs allege that African-Americans were grossly under-represented in the top quintiles and over-represented in the lowest quintiles of production credits. As a result, plaintiffs allege that African-American FAs were disproportionately excluded from receiving retention awards and that the retention awards that were given to African-American FAs were lower than they would have been absent unlawful discrimination. Plaintiffs challenge their annual compensation and retention awards following the merger "as the product of discriminatory input to the retention award formula, as well as its intentionally discriminatory design."

**DISCUSSION**

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As an initial matter, plaintiffs argue that the motion should be denied on procedural grounds, without even reaching its merits. First, plaintiffs argue that Seventh Circuit precedent dictates that "courts should rule on class certification prior to ruling on the merits of the case." That is true as a general matter, because Fed. R. Civ. P. 23(c) provides that the court must decide class certification early in the litigation, and Bertrand v. Maram, 495 F.3d 452 (7th Cir. 2007), suggests the decision should be before any final decision on the merits. But a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the

---

[1] In the above-cited opinion, this court denied class certification.

complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Plaintiffs have presented, and this court is aware of no case that holds that the court must rule on class certification prior to determining whether the complaint is sufficient, particularly where, as in the instant case, no motion for class certification has been filed.

Next, plaintiffs argue that the court should strike the instant motion because Judge Kennelly, to whom the case was originally assigned, had denied a motion on similar grounds. Judge Kennelly's order, however, as defendants point out, was issued prior to the Supreme Court's decision in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), which clarified the new pleading standards first announced in Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). The order also addressed the allegations in the original complaint. Plaintiffs have filed an amended complaint and defendants are entitled to and have challenged by motion the sufficiency of that complaint.

To survive such a motion, the complaint must meet the plausibility standard. Although detailed factual allegations are not required, the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 555, 570. A claim is facially plausible when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. "Where a complaint pleads facts that are `merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

In Iqbal, the Court indicated that two working principles underlie its decision in Twombly. First, the tenet that the court must accept as true all of the allegations in the complaint

4

is inapplicable to legal conclusions. "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. Second, only those complaints that state a plausible claim for relief survive a motion to dismiss, and the determination of whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not `show[n]' – 'that the pleader is entitled to relief.'" Id.

Applying these principles to the instant case reveals that the complaint merely alleges discriminatory conduct but has not "shown" that plaintiffs are entitled to relief. As defendants argue, §703(h) of Title VII, 42 U.S.C. § 2000e-2(h), protects an employer's bona fide merit, seniority or production-based compensation system, even where the system has a discriminatory impact. The section provides in pertinent part:

> Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation . . . pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production: provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex or national origin.

Thus, under § 703(h), a disparate impact alone is insufficient to invalidate an otherwise bona fide merit, seniority or production-based compensation system. Actual intent to discriminate must be alleged and proved. American Tobacco Co. v. Patterson, 456 U.S. 63, 65 (1982). Such a system is bona fide if it applies equally to all employees the same way. So long as the system itself was adopted without a discriminatory intent it is bona fide and immunized

under § 703(h), even if it perpetuates the effects of other acts of discrimination that clearly violate Title VII. Id. at 705; see Teamsters v. United States, 431 U.S. 324, 348 (1977).

In the instant case, as described in plaintiffs' complaint, the method used to compute the retention awards qualifies as a production-based compensation system under § 703(h). It used a gender- and race-neutral formula that was measured solely based on each individual FA's annualized production credit through September 2008. As noted by Judge Scheindlin in Goodman v. Merrill Lynch & Co., Inc., 716 F. Supp.2d 253, 261 (S.D. N.Y. 2010), a case in which the same ATP system was upheld under § 703(h) from a challenge that it discriminated based on gender, "[a]lthough other discrimination by Merrill Lynch regarding account distributions and partnership formations may have affected the plaintiffs' overall production credits, thereby skewing the input into the ATP, the ATP itself remains a protectable production based compensation system under section 703(h)."[2]

Therefore, plaintiffs' complaint challenging the ATP retention computation system states a claim only if it contains sufficient factual allegations to make it plausible that the system was adopted with the intent to discriminate against African-American FAs in favor of white FAs. It does not. The complaint alleges (¶ 20) that "plaintiffs challenge their annual compensation and retention award following the Bank of America merger as the product of discriminatory input to the retention award formula, as well as its intentionally discriminatory design." As Iqbal makes clear, these are mere conclusory statements that do not satisfy the plausibility standard. "Purposeful discrimination requires more than `intent as volition or intent as awareness of

---

[2]Goodman was brought by the same lawyers who represent plaintiffs in the instant action, and the complaint in Goodman with respect to the challenge to the ATP, contains virtually identical factual allegations as the instant complaint.

consequences'; it involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the actions' adverse effects upon an identifiable group." Iqbal,129 S.Ct. At 1951 (quoting Personnel Administrator of Mass. v. Fenney, 442 U.S. 256, 279 (1979)).

In short, plaintiffs allege that the system was designed with discriminatory intent, but under Iqbal they must do more. They must plead sufficient factual matter to show that defendants adopted and implemented the retention system not for a neutral reason, but for the purpose of discriminating against African-American FAs. Id.; Day v. Patapsco & Back Rivers RR Co., 504 F. Supp. 1301, 1310 (D. Md. 1981). The instant complaint does contain detailed factual allegations of pervasive past and continuing intentional discrimination by Merrill Lynch. This court agrees with Goodman, however, that at best these allegations suggest that "defendants had knowledge of this past discrimination when they adopted the ATP. But knowledge of past and even present discrimination alone does not make it plausible that defendants actually adopted the ATP with discriminatory intent. Rather, the clear inference from the Complaint is that following the Bank of America's acquisition of Merrill Lynch, defendant established the ATP in an effort to retain Merrill Lynch's FAs." Goodman, 716 F. Supp.2d at 261-62. The court further agrees with Judge Scheindlin that "[t]o the extent that other acts of discrimination in violation of Title VII affect the `inputs' into a bona fide merit, seniority, or production-based compensation system, a plaintiff's remedy lies in challenging those other violations directly." Id. at 261. This is precisely what the instant plaintiffs have done in McReynolds I.

In their brief, plaintiffs chastise defendants for failing to inform this court that plaintiffs filed an amended complaint in Goodman which was not challenged. But it is plaintiffs who have misrepresented the course of the Goodman pleadings. The amended complaint to which they

7

refer acknowledges Goodman's inability to plead sufficiently that defendants designed the ATP with discriminatory intent. Plaintiffs' counsel in Goodman (including the same attorneys representing plaintiffs in the instant case), informed Judge Scheindlin: "Mindful of the Court's `great skepticism' of plaintiffs ability to sufficiently allege that the ATP was adopted to intentionally discriminate against female FAs, and mention of Rule 11 sanctions (Order at 17-18), plaintiff does not believe that she can plead additional facts, without discovery, that would persuade the court that her challenge to defendants' intentionally discriminatory design of the ATP is actionable." The surviving amended complaint in Goodman to which the instant plaintiffs refer challenges only the "inputs" into the ATP. To the extent that plaintiffs suggest that the instant complaint survives because it contains similar challenges, it is duplicative of McReynolds I.

Moreover, even if plaintiffs' factual allegations with respect to the inputs (which are the subject of McReynolds I) were sufficient to allow the court to infer more than the mere possibility that Merrill Lynch designed the ATP with discriminatory intent (and they clearly are not), those same allegations in no way suggest that BOA acted with any discriminatory intent. There are simply no facts in the complaint to suggest even the possibility that BOA ever discriminated against African-Americans. Indeed, any such inference would be illogical given that BOA would have no incentive to subject itself to yet another lawsuit by these plaintiffs.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted.

**ENTER:** March 29, 2011

_____
**Robert W. Gettleman**

8

**United States District Judge**